# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALAIN DULAC,<br><br>        Plaintiff,<br><br>v.<br><br>MTS SYSTEMS CORPORATION, DAVID J. ANDERSON, RANDY J. MARTINEZ, NANCY ALTOBELLO, DAVID D. JOHNSON, MICHAEL V. SCHROCK, CHUN HUNG YU, and LINDA ZUKAUCKAS,<br><br>        Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

        Plaintiff Alain Dulac ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by MTS Systems Corporation ("MTS Systems" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning MTS Systems and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against MTS Systems and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Amphenol Corporation ("Parent") and Moon Merger Sub Corporation ("Merger Sub," and together with Parent, "Amphenol") (the "Proposed Transaction").

2. On December 8, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Amphenol. Pursuant to the terms of the Merger Agreement the Company's shareholders will receive $58.50 in cash per share of MTS Systems stock owned (the "Merger Consideration").

3. On January 28, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against MTS Systems and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to MTS Systems shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of MTS Systems shares.

9. Defendant MTS Systems is incorporated under the laws of Minnesota and has its principal executive offices located at 14000 Technology Drive, Eden Prairie, Minnesota 55344. The Company's common stock trades on the NASDAQ under the symbol "MTSC."

10. Defendant David J. Anderson ("Anderson") is and has been the Chairman of the Board of MTS Systems at all times during the relevant time period.

11. Defendant Randy J. Martinez ("Martinez") is and has been the President, Chief Executive Officer and a director of MTS Systems at all times during the relevant time period.

12. Defendant Nancy Altobello ("Altobello") is and has been a director of MTS Systems at all times during the relevant time period.

13. Defendant David D. Johnson ("Johnson") is and has been a director of MTS Systems at all times during the relevant time period.

14. Defendant Michael V. Schrock ("Schrock") is and has been a director of MTS Systems at all times during the relevant time period.

15. Defendant Chun Hung Yu ("Yu") is and has been a director of MTS Systems at all times during the relevant time period.

16. Defendant Linda Zukauckas ("Zukauckas") is and has been a director of MTS Systems at all times during the relevant time period.

17. Defendants Anderson, Martinez, Altobello, Johnson, Schrock, Yu, and Zukauckas are collectively referred to herein as the "Individual Defendants."

18. The Individual Defendants, along with Defendant MTS Systems, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19. MTS Systems is a global supplier of advanced test systems, motion simulators and precision sensors. The Company's testing and simulation hardware, software and service solutions help customers accelerate and improve their design, development and manufacturing processes and are used for determining the mechanical behavior of materials, products and structures. The Company's high-performance sensors provide measurements of vibration, pressure, position, force and sound in a variety of applications.

### The Company Announces the Proposed Transaction

20. On December 9, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> WALLINGFORD, Conn. & EDEN PRAIRIE, Minn.--(BUSINESS WIRE)--Amphenol Corporation (NYSE: APH) ("Amphenol"), a leading global provider of high-technology interconnect, antenna and sensor solutions, and MTS Systems Corporation (Nasdaq: MTSC) ("MTS"), a leading global supplier of advanced test systems, motion simulators and precision sensors, today announced that they have entered into a definitive agreement under which Amphenol will acquire MTS for $58.50 per share in cash, or approximately $1.7 billion, including the assumption of outstanding debt and liabilities, net of cash.
>
> "We have long admired MTS's technology and position across a variety of attractive end markets," said R. Adam Norwitt, Amphenol's President and CEO. "This acquisition is consistent with our strategy of continuing to expand our range of sensor and sensor-based products across a wide array of industries to further capitalize on the long-term growth potential of the electronics revolution. We are extremely excited about the strength of our combined product portfolio which will enable us to offer even more innovative technologies to our customers around the world. I look forward to welcoming the talented MTS team to the Amphenol family."
>
> "Amphenol is a leader in interconnect and sensor technologies with a proven management team and a strong track record of successfully acquiring companies across its platform," said Randy J. Martinez, MTS's Interim President and CEO. "MTS brings to Amphenol its high-quality technology solutions, a diversified customer base of blue-chip companies and a strong financial profile. We could not be more pleased to join forces with Amphenol, which will allow us to continue to deliver exceptional customer experience through high-quality and innovative solutions."
>
> David J. Anderson, Chairman of MTS's Board of Directors, concluded, "The MTS Board of Directors is pleased, as a result of its strategic review, to deliver MTS Systems shareholders the value inherent in this transaction. I have full confidence that, together with Amphenol, MTS will continue to engineer technologies that meaningfully improve and modernize the world's products – for the benefit of its customers – for generations to come."
>
> MTS is organized into two business segments: Sensors and Test & Simulation. The Sensors segment represents a highly complementary offering of high-technology, harsh environment sensors sold into diverse end markets and applications, and positions Amphenol to have one of the industry's broadest ranges of sensors and sensor-based products. The Test & Simulation segment is

an industry leader and Amphenol believes it represents an attractive business with excellent near and long-term potential. Accordingly, Amphenol plans to undertake a strategic review of the business to best position it for future success.
The acquisition of MTS is expected to be accretive to Amphenol's earnings per share in the first year after closing, with approximately $0.10 and $0.06 attributable to MTS's Sensors and Test & Simulation segments, respectively. This assumes the post-closing reduction of certain public company costs. The transaction will be financed through a combination of borrowings under Amphenol's existing credit and commercial paper facilities as well as cash on hand.

The transaction has been unanimously approved by the boards of both companies and is expected to close by the middle of 2021, subject to certain regulatory approvals, approval from MTS's shareholders and other customary closing conditions.

Advisors

Centerview Partners LLC is serving as Amphenol's financial advisor for the transaction and Latham & Watkins, LLP is acting as its legal advisor. J.P. Morgan Securities LLC and Evercore are serving as MTS's co-financial advisors and Sidley Austin LLP is acting as its legal advisor.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

21. On January 28, 2021, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

22. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Company's Financial Projections**

23. The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

24. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

25. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

26. Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) EBIT; and (ii) NOPAT.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

27. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Financial Opinions**

28. The Proxy Statement contains the financial analyses and opinion of J.P. Morgan Securities LLC ("J.P. Morgan") concerning the Proposed Transaction, but fails to provide material information concerning such.

29. With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Proxy Statement fails to disclose the basis for J.P. Morgan's selection of the multiple reference range of 9.5x to 13.0x for the Company's FV / 2021E adj. EBITDA.

30. With respect to J.P. Morgan's *Selected Transaction Analysis*, the Proxy Statement fails to disclose the basis for J.P. Morgan's selection of the multiple reference range for FV / LTM adj. EBITDA of 9.0x to 13.5x.

31. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying J.P. Morgan's selection of the discount rates ranging from 9.5% to 11.0%; and (iii) the inputs and assumptions underlying J.P. Morgan's selection of the perpetuity growth rates of 2.0% to 3.0%.

32. With respect to J.P. Morgan's *Analyst Price Targets* analysis, the Proxy Statement fails to disclose the price targets observed in the analysis, as well as the sources thereof.

33. Next, the Proxy Statement contains the financial analyses and opinion of Evercore Group L.L.C. ("Evercore") concerning the Proposed Transaction, but fails to provide material information concerning such.

34. With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying Evercore's selection of the discount rates ranging from 9.5% to 11.0%; (iii) the inputs and assumptions underlying Evercore's selection of the perpetuity growth rates of 2.0% to 3.0%; (iv) the estimated net debt used in Evercore's analysis; and (v) the number of fully diluted shares of Company common stock used in Evercore's analysis.

35. With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed in Evercore's analysis.

36. With respect to Evercore's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the each of the transactions observed in Evercore's analysis.

37. With respect to Evercore's *Premiums Paid Analysis*, the Proxy Statement fails to disclose the transactions observed in the analysis, as well as the premiums paid in the transactions.

38. With respect to Evercore's *Equity Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose the specific price targets observed in the analysis, as well as the sources thereof.

39. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and

range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

40. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is

made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

45. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

46. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

47. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are

no material misstatements or omissions.

48. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

49. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of MTS Systems within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of MTS Systems, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements

contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

55. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by

their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 3, 2021                                  Respectfully submitted,

                                                         By: */s/ Joshua M. Lifshitz*
                                                         Joshua M. Lifshitz
                                                         Email: jml@jlclasslaw.com

**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*